## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AARON RALPH,

      Petitioner,

v.

DEBRA SCUTT,

      Respondent,

_____/

Civil No. 11-CV-11284
HONORABLE GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER (1) GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING PETITIONER'S MOTION FOR AN EVIDENTIARY HEARING, (3) DISMISSING THE PETITION FOR WRIT OF HABEAS CORPUS; AND (4) DENYING A CERTIFICATE OF APPEALABILITY.**

      Aaron Ralph, ("Petitioner"), presently incarcerated at the Cotton Correctional Facility in Jackson, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for two counts of first-degree criminal sexual conduct, MICH. COMP. LAWS 750.520b(1)(a), and one count of attempted second-degree criminal sexual conduct. MICH. COMP. LAWS 750.520c(1)(a). This matter is before the Court on Respondent's motion for summary judgment, asserting that the Court should dismiss the petition as untimely. Petitioner has filed a response to the motion for summary judgment. He has also filed a motion for an evidentiary hearing. For the reasons set forth herein, the Court agrees with Respondent and dismisses the petition for failure to comply with the one-year statute of limitations set forth at 28 U.S.C. § 2244(d). The Court also denies Petitioner's motion for an evidentiary hearing and denies a certificate of appealability.

## I. Facts and Procedural History

The charges against Petitioner concerned the sexual molestation of his seven-year-old twin half-sisters. Sometime early in 1996, the victims' mother, Janet Ralph was out shopping with one of her three sons, Robert Ralph. The victims' father, Bernie Ralph, had returned from work and was sleeping in the livingroom. The victims' two other teenaged brothers, Jesse and Benton Ralph, were outside in the yard.

Rachel Ralph, who was nine years old at the time of trial, testified that Petitioner took her into the bathroom and locked the door. He pinned her against a wall and tried to touch her crotch area. Rachel was able to squirm away and leave the bathroom. Petitioner then picked up Ruth Ralph, Rachel's twin, and carried her into the bathroom. Ruth started screaming, alerting Jesse and Benton. Jesse testified that he heard his sister screaming and came inside the house and started banging on the locked bathroom door. When he was unable to get inside, he got Benton. Both boys started pounding on the door. According to the boys, Petitioner opened the door and told them, "If you tell, I'm going to shoot you." Jesse could see Ruth on the floor of the bathroom.

Petitioner then went back inside the bathroom and locked the door. Ruth testified that he pulled her pants down and forced his fingers into her vagina. He then pulled down his pants and penetrated her vagina with his penis. When Petitioner attempted to force Ruth to touch his penis with her hand, she managed to run out of the bathroom. Petitioner then retrieved a handgun and started to waive it around the house. Bernie Ralph slept through the entire incident.

The children testified that they were afraid of Petitioner and did not tell their parents about what happened until after Petitioner had been kicked out of the house.

2

Petitioner was interviewed by a police detective in March of 1998.  After initially denying doing anything more than wrestling with the girls, Petitioner ultimately admitted that he put his hands down Ruth's pants and inserted two fingers into her vagina.  The confession was put in writing by the officer and signed by Petitioner.

The defense theory was that the entire story was concocted by  Janet Ralph, Petitioner's step-mother.  Janet Ralph testified  that when she married Bernie Ralph, Petitioner was thirteen years old.  Shockingly, she admitted that she and Petitioner had a long-term sexual relationship.  This relationship continued until Petitioner was in his twenties.  Janet also testified that Jesse was actually Petitioner's child.  Janet admitted that after another man, her boyfriend, starting living at the house–along with her husband–Petitioner became upset.

Petitioner testified that the allegations against him surfaced when he started refusing to have sex with Janet, argued with her about having her boyfriend live in the house, and was then kicked out of the house.  Petitioner also claimed that the police officer tricked him into signing the written confession with a promise that he would not get any time if he did so.

In light of the evidence presented at trial, Petitioner was found guilty of two counts of first-degree criminal sexual conduct and one count of attempted second-degree criminal sexual conduct.

Following his convictions, Petitioner pursued an appeal of right.  On November 17, 2000, the MichiganCourt of Appeals issued an unpublished opinion affirming Petitioner's conviction. *People v. Ralph*, No. 214719 (Mich. Ct. App. November 17, 2000).  Petitioner then filed a pro per application for leave to appeal in the MichiganSupreme Court, but on

3

July 30, 2001, it was denied by standard order. *People v. Ralph*, No. 118362 (Mich. Sup. Ct. July 30,2001). Petitioner filed a motion for reconsideration which was denied on November 30, 2001. His conviction became final 90 days later, when the time expired for him to file a petition for writ of certiorari in the United States Supreme Court.

Almost eight years later, on October 30, 2009, Petitioner filed a motion for an evidentiary hearing in the state trial court. The trial court treated the filing as a motion for relief fromjudgment pursuant to Michigan Court Rule 6.500, and on December 4, 2009, it denied relief. Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, but it was denied on February 5, 2010. *People v. Ralph*, No. 295632 (Mich. Ct. App. February 5, 2010). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, but it was denied on July 26, 2010. *People v. Ralph*, No. 140608 (Mich. Sup. Ct. July 26, 2010). The Michigan Sureme Court denied reconsideration on October 26, 2010.

On March 11, 2011, Petitioner dated his current petition for habeas relief.

## II. Discussion

### A. Motion for Summary Judgment

The Court will grant Respondent's motion for summary judgment because the petition for writ of habeas corpus was not filed within the one-year statute of limitations.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Sanders v. Freeman*, 221 F. 3d 846, 851 (6th Cir. 2000)(quoting FED.

4

R. Civ. P. 56(c)).  To defeat a motion for summary judgment, the non-moving party must set forth specific facts sufficient to show that a reasonable factfinder could return a verdict in his favor. *Id.*

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a one-year statute of limitations applies to an application for writ of habeas corpus by a person in custody pursuant to a judgment of a state court.  The one year statute of limitation runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

A petition for writ of habeas corpus must be dismissed where it has not been filed within the one year statute of limitations.  *See Holloway v. Jones*, 166 F. Supp. 2d 1185, 1187 (E.D. Mich. 2001).

Petitioner's direct review was concluded in early 2002, about nine years before he filed his present habeas petition.  Thus, for the petition to be considered timely, Petitioner is required to either demonstrate a later starting point for the limitations period or to demonstrate entitlement to equitable tolling.  Petitioner alleges that the period did not begin

5

to run until a short time before he filed his motion for relief from judgment in the state trial court, when he claims he discovered new evidence of his actual innocence. He also claims that he is entitled to equitable tolling because he is actually innocent.

Pursuant to 28 U.S.C.§ 2244(d)(1)(D), the AEDPA's one year limitations period begins to run from the date upon which the factual predicate for a claim could have been discovered through due diligence by the habeas petitioner. *See Ali v. Tennessee Board of Pardon and Paroles*, 431 F. 3d 896, 898 (6th Cir. 2005). The date of the actual discovery of the factual predicate does not matter, it is the date on which it could have discovered through due diligence that marks the starting point. *See Redmond v. Jackson*, 295 F. Supp 2d 767, 771 (E.D. Mich. 2003). Moreover, the time under the AEDPA's limitations period begins to run pursuant to § 2244(d)(1)(D) when a habeas petitioner knows, or through due diligence, could have discovered, the important facts for his or her claims, not when the petitioner recognizes the facts' legal significance. *Id.* Finally, "§ 2244(d)(1)(D) does not convey a statutory right to an extended delay while a petitioner gathers every possible scrap of evidence that might support his claim." *Redmond*, 295 F. Supp. 2d at 771. "Rather, it is the actual or putative knowledge of the pertinent facts of a claim that starts the clock running on the date on which the factual predicate of the claim could have been discovered through due diligence, and the running of the limitations period does not await the collection of evidence which supports the facts, including supporting affidavits." *Id.* at 772. A habeas petitioner has the burden of proof in persuading a federal court that he or she exercised due diligence in searching for the factual predicate of the habeas claims. *See Stokes v. Leonard*, 36 Fed. Appx. 801, 804 (6th Cir. 2002).

In the present case, Petitioner alleges that letters he has received while in prison

6

from Janet Ralph establish that he is actually innocent.  He attached the letters to his habeas petition.  The first purported letter from Janet to Petitioner references Petitioner's allegation that Robert Ralph was once caught placing a finger in Rachel's vagina.  Petitioner alleges that he has first-hand knowledge of this alleged incident, which he says occurred prior to the date of his alleged offense.  Petitioner speculates that when the twins were given a medical examination prior to his trial, their identities must have been switched so that it would appear that it was Ruth's hymen that had been ruptured and not Rachel's.  He alleges that this was done so that the medical records would line-up with Ruth's trial testimony.

Petitioner notes that subsequent letters from Janet strike a friendlier tone.  One letter refers to Janet sending Petitioner money, and another letter includes pictures of the twins.  Petitioner argues that it is inconceivable that the mother of the victims would send money and pictures to Petitioner if she really believed him to be guilty of the offenses.

Petitioner further notes what he views as inconsistencies in the trial testimony of the prosecution witnesses.  He states that the victims' testimony that they sat by their father following the incident was contradicted by other testimony.  And he points out the improbability of him having access to a gun because he claims the guns were locked in a safe and he did not have a key.  Finally, Petitioner alleges that Jesse has recanted his trial testimony, but because of threats made by other family members, he is unable or unwilling to present any evidence of the recantation.

Petitioner is not entitled to invoke the provisions of § 2244(d)(1)(D) to delay the commencement of the one year limitations based on these items because he has failed to offer any argument as to why he could not have discovered the basis for these claims

earlier. He does not allege when the letters were sent to him. And, in any event, he admits that he knew about the allegations concerning Robert Ralph even before trial. If there is a claim concerning Robert's alleged molestation of Rachel, Petitioner has not explained why he did not raise it earlier.

To the extent Janet Ralph sent money and photographs to Petitioner in prison, the information does not form the predicate to any constitutional claim. At most, it casts doubt on her credibility, but her twisted relationship with Petitioner–and therefore the extent to which it gave her reason to manipulate her children–was well-known and explored at the time of trial.

Finally, Petitioner does not state when or how he believes Jesse has recanted his trial testimony, nor does he proffer any details of the alleged recantation. The other items–his lack of access to a gun and alleged inconsistencies in trial testimony–are not newly discovered matters. Therefore, § 2244(d)(1)(D) does not save his petition from being time-barred. *See Townsend v. Lafler*, 99 Fed. Appx. 606, 608-09 (6th Cir. 2004).

To the extent Petitioner is arguing that his actual innocence excuses him from complying with the statute of limitations altogether, the AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S. Ct. 2549, 2560, 177 L. Ed. 2d 130 (2010). The one year statute of limitations may be equitably tolled based upon a credible showing of actual innocence under the standard enunciated in *Schlup v. Delo*, 513 U.S. 298 (1995). *See Souter v. Jones*, 395 F. 3d 577, 599-600 (6th Cir. 2005). To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 590 (quoting *Schlup*, 513 U.S. at 327). For an actual innocence exception to be credible, such

8

a claim requires a habeas petitioner to support his or her allegations of constitutional error "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324; *Souter*, 395 F. 3d at 590. The Sixth Circuit further noted that "actual innocence means factual innocence, not mere legal insufficiency." *Souter*, 395 F. 3d at 590 (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Finally, the Sixth Circuit in *Souter* recognized the Supreme Court's admonition that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* (quoting *Schlup*, 513 U.S. at 321).

Petitioner's new evidence falls far short of establishing his actual innocence. While it is troubling on several levels that Janet Ralph sent money and pictures of the twins to Petitioner in prison, it is not the sort of information that necessarily casts doubt on his guilt. Janet admitted at trial that she was engaged in a sexual relationship with Petitioner from the time he was thirteen years old. She admitted that they began to fight and eventually kicked Petitioner out of the house after she allowed her boyfriend to move into the house. Accordingly, the jury was fully appraised of the twisted household in which Petitioner lived, and it was given facts to support Petitioner's contention that Janet had manipulated the charges against him. Nevertheless, the jury obviously chose to discount the defense. New evidence that Janet continues to communicate with Petitioner could reasonably be similarly discounted. It is not so exculpatory that it is more likely than not that no reasonable juror would find Petitioner guilty beyond a reasonable doubt.

Similarly, Petitioner's speculation that the twins identities were switched so that the medical records would be consistent with their testimony is unpersuasive. The

9

photographs Petitioner attached to his petition show that the twins are not identical in appearance. And they were examined by their family doctor. In any event, this speculation is not based upon new evidence, but on Petitioner's allegation that one of the twins had been molested by his half-brother Robert, which he claims he knew about at the time of trial. Likewise none of the other items–the alleged inconsistencies and the lack of access to any guns–persuasively demonstrates Petitioner's actual innocence under the *Schlup* standard. Petitioner is therefore not entitled to equitable tolling under *Souter*.

**B. Motion for Evidentiary Hearing**

Petitioner has filed a motion for an evidentiary hearing. He alleges that during his appeal of right, the state court decided his claims against him without granting him a hearing. He asserts that a hearing is required to create a record for his claims that: (1) he was denied the effective assistance of trial counsel; (2) to produce the video tape of his confession to police; and (3) to establish that part of his trial testimony was not transcribed.

None of these items relate to the timeliness of his petition. Therefore, Petitioner's motion for evidentiary hearing is denied as moot.

**III. Conclusion**

Based on the foregoing analysis, the Court concludes that petitioner failed to file his habeas petition within the one-year limitations period established by 28 U.S.C. § 2244(d) and the statute of limitations precludes federal review of the petition. Accordingly, the Court **GRANTS** Respondent's motion for summary judgment and **DISMISSES** the petition for writ of habeas corpus.

Before petitioner may appeal this Court's dispositive decision, a certificate of

10

appealability must issue.  See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  When a plain procedural bar is present and the district court is correct to invoke it to dispose of the matter, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed.  In such a case, no appeal is warranted. *Id.*  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

After conducting the required inquiry and for the reasons stated herein, the Court is satisfied that jurists of reason would not find the Court's procedural ruling debatable.  No certificate of appealability is warranted in this case.  Accordingly, the Court **DENIES** a certificate of appealability.

The Court likewise denies Petitioner permission to appeal in forma pauperis because any appeal would be frivolous.

Finally, the Court denies Petitioner's motion for an evidentiary hearing.

**IT IS SO ORDERED.**

Dated:  April 9, 2012

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 9, 2012, by electronic and/or ordinary mail and also to
Aaron Ralph at G. Robert Cotton Correctionsl Facility, 3500 N.
Elm Road, Jackson, MI 49201.

S/Josephine Chaffee
Deputy Clerk

12